IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PAUL ABRETSKE and wife,　　　　　　　)
VICTORIA ABRETSKE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　) CASE NO. 3:04-0369
　　　　　　　　　　　　　　　　　　　) JUDGE NIXON/KNOWLES
　　　　　　　　　　　　　　　　　　　)
KEYSTONE BUILDERS RESOURCE　　　　　)
GROUP OF NASHVILLE, L.L.C., a　　　　　)
Tennessee Limited Liability Company,　　)
and KEYSTONE BUILDERS　　　　　　　)
RESOURCE GROUP, INC., a Nevada　　　)
Corporation,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' "Motion to Compel Binding Arbitration and Stay Litigation." Docket No. 3. Defendants have filed a supporting legal Memorandum. Docket No. 4. Plaintiffs have filed a Response in Opposition to the Motion. Docket No. 7. Judge Nixon has referred this matter to the undersigned for consideration. Docket No. 13.

On September 11, 2001, Plaintiffs entered into a contract for the construction and purchase of a single-family home from Defendant Keystone Builders Resource Group of Nashville, L.L.C. ("KBRG Nashville"). It is undisputed that the contract has an arbitration clause that states as follows:

> 15. BINDING ARBITRATION. All claims, disputes, and matters in question between Seller and Purchaser arising out of this Agreement and any warranty hereunder shall be decided by arbitration in accordance with the rules of the American Arbitration Association. Purchaser must pay the cost of arbitration when filing a claim. The arbitration shall be enforceable under state law and the outcome or award rendered by the arbitrators shall be final and binding on all parties hereto. If Purchaser instigates legal proceedings against Seller for any obligations arising or claims to have arisen under this Agreement prior to giving Seller proper notice and opportunity to cure and/or prior to binding arbitration, Purchaser agrees to indemnify the Seller for all costs and expenses of such litigation, including reasonable attorney's fees regardless of whether Purchaser has an otherwise legitimate claim under this Agreement

Docket No. 6, Ex. 1 ("Real Estate Purchase Agreement")

The parties to the Agreement are clearly set out as KBRG Nashville ("Seller") and Paul Abretske and Vicky Abretske ("Purchaser")

Despite the arbitration provision of the Real Estate Purchase Agreement, on March 29, 2004, Plaintiffs filed a Complaint in the Chancery Court for Williamson County, Tennessee, against KBRG Nashville and another Defendant, Keystone Builders Resource Group, Inc. ("Keystone"). Defendants subsequently removed the case to this Court pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332 (diversity). Docket No. 1. Plaintiff subsequently filed a "First Amended Complaint." Docket No. 11.

In their First Amended Complaint, Plaintiffs essentially alleged that they had contracted with KBRG Nashville to build a single-family residence in Spring Hill, Tennessee. Plaintiffs alleged that KBRG Nashville was "incorporated in 1999 in Tennessee as a subsidiary of

2

Keystone to build homes under the Keystone name."[1] Docket No. 11, p. 2

While the only parties to the contract were Plaintiffs and Defendant KBRG Nashville, Plaintiffs averred that Keystone's marketing materials stated that the "local Keystone Building partner" would build a home of superior value and lasting quality under the umbrella of Keystone's National Building Program.

Plaintiff essentially averred that, after the home was built, they noticed numerous problems with the home "including aesthetic issues of poor workmanship and issues involving structure elements of the home." Docket No. 11, p. 4. Plaintiffs further averred, upon information and belief, that both Defendants "deliberately attempted to avoid liability by forming a series of business entities that allowed them to deflect liability away from themselves." *Id.*, p. 9. Plaintiffs averred that Defendants intentionally misled them concerning the quality of the home to be constructed. Plaintiffs argued that Defendants are guilty of fraud, breach of contract (with regard to KBRG Nashville), negligent misrepresentation, and negligence. Plaintiffs also sue under a theory of "mistake" and Plaintiffs averred that both Defendants violated provisions of the Tennessee Consumer Protection Act.

## II. Analysis

In the instant Motion, Defendants argue that Plaintiffs' claims against KBRG Nashville must be arbitrated pursuant to the parties' Agreement discussed above. Defendants further argue that Plaintiffs' action against Keystone in this Court should be stayed, pending the outcome of the arbitration between Plaintiffs and KBRG Nashville.

---

[1] According to the Notice of Removal, KBRG Nashville is a limited liability company, the only member of which is KBRG Holdings, Inc. It does not appear, therefore, that KBRG Nashville is a "subsidiary of Keystone."

3

In support of their Motion, Defendants state that KBRG Nashville, in the course of constructing the dwelling at issue, incorporated materials that were assembled and/or manufactured in various states throughout the United States by companies having their principal places of business outside the state of Tennessee. Docket No. 3, p. 3, Docket No. 5, Affidavit of Douglas S. Jones, p. 3. Thus, Defendants argue, the Federal Arbitration Act is applicable.

Defendants also argue that paragraph 9 of the Real Estate Purchase Agreement provided Plaintiffs with an express Limited Warranty. That paragraph states as follows:

> 9. WARRANTY Purchaser has reviewed the limited warranty booklet and acknowledges that it is the sole warranty being given by Seller to Purchaser and that there is no other warranty, expressed or implied

Defendants point out that the Warranty also contains an arbitration provision:

> ARBITRATION Any and all claims, disputes and controversies arising under or relating to this Agreement, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS") in effect at the time of the request for arbitration If CAS shall for any reason be unable or unwilling to conduct, or is disabled from conducting such arbitration, the arbitration shall be conducted by and pursuant to the rules of the American Arbitration Association applicable to home warranty arbitration proceedings in effect at the time of the request for arbitration. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.
>
> The initiation or participation by any party in any judicial proceeding shall not be deemed a waiver of the right to enforce this arbitration division, and notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this arbitration

4

provision. Any party shall be entitled to recover reasonable
attorney's fees and costs incurred in enforcing this arbitration
provision, and the arbitrator shall have sole authority to award such
fees and costs.

Defendants argue that the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) makes a written agreement to arbitrate in any contract evidencing a transaction involving commerce valid, irrevocable, and enforceable. Section 2 of the Act provides as follows:

**Section 2. Validity, Irrevocability, and Enforcement of Agreement to Arbitrate.**
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration and existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

As Defendants correctly argue, the Federal Arbitration Act applies in this case because the Agreement at issue involves interstate commerce. *See Frizell Construction Co. v Gatlinburg, LLC*, 9 S.W.3d 79, 82-83 (Tenn. 1999).

Moreover, there is a "liberal federal policy favoring arbitration agreements." *Moses H Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Additionally, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.*

Defendants finally argue that, not only should the Court order Plaintiff and KBRG Nashville to arbitrate, but that the Court should also stay proceedings against Keystone pending

5

that arbitration. Defendants cite *Tennessee Imports, Inc. v. Filippi,* 745 F. Supp 1314 (N.D. Tenn. 1990) (Nixon, J.) as follows:

> The mere presence in a suit of non-arbitrating parties or non-arbitrable claims, however, will not defeat enforcement under the Act and the Convention regarding those claims which are arbitrable
>
> "The pre-eminent concern of Congress in passing the Act was to force private agreements into which parties had entered, and that concern requires that [courts] rigorously enforce the agreements to arbitrate, even if the result is 'piecemeal' litigation..."
>
> If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.

745 F. Supp at 1330 (citations omitted).

In *Filippi,* the Court pointed out that Plaintiff's claims against Defendants were closely related, and that in order to sustain an action against a non-arbitrating Defendant, Plaintiff had to prove that the arbitrating Defendant breached its contract with Plaintiff. *Id.* at 30-31. The *Filippi* Court also noted that in order to prevent double recovery, damages against the non-arbitrating Defendant would have to be reduced by any damages Plaintiff recovered from the arbitrating Defendant. Thus, the *Filippi* Court found that the claims against the non-arbitrating Defendant should be stayed pending completion of arbitration.

Despite the authorities referred to above, Plaintiffs' Response argues that "arbitration is not mandated in this instance." Docket No. 7, p. 1. Plaintiffs main argument appears to be that "the warranty and contract provision on which it relies specifically excludes [*sic*] from arbitration and the warranty involving defects which are in violation of local building codes." Docket No. 7,

6

p. 3. Plaintiffs state as follows:

> Section VIII of the Warranty specifically states that "violations of local, national building codes, ordinances, or standards," are excluded from the Warranty. . . . Because the Warranty specifically excludes codes issues from coverage and, by extension, arbitration, this case cannot be submitted to arbitration.

*Id.*, p. 4.

Plaintiffs logic on this point, however, is faulty. The Warranty does not specifically exclude "codes issues" from coverage. Section VIII of the Warranty, which is headed **"EXCLUSIONS,"** states in pertinent part as follows:

> This Warranty does not apply to:
>
> . . .
>
> 26. Violations of local or national building codes, ordinances or standards.

Docket No. 6, Ex. 2, p. 8-9.

The likely meaning of this provision is that if the home is cited for a violation of local or national building codes, ordinances, or standards, the Warranty does not require the builder to bring those defects up to those standards. If the Exclusion meant what Plaintiffs contend it means, the Warranty would be essentially worthless, because most of the construction defects that might otherwise be covered by the Warranty would probably constitute building codes violations as well.

Even if the Court reads the Exclusion as Plaintiffs suggest, however, there are still two problems with Plaintiffs' position: (1) simply because "codes issues" are excluded from coverage under the Warranty, that does not necessarily mean that they are excluded from arbitration under the Warranty, and (2) even if "code issues" are excluded from arbitration under the Warranty, the

7

arbitration provision of the Real Estate Purchase Agreement would still apply.

Plaintiffs next argue that, "The Warranty is irrelevant." Docket No. 7, p. 4. It seems curious that Plaintiffs would make this argument immediately after making the argument set forth above concerning the importance of the Warranty. Plaintiffs apparently wish to pick and choose which provisions of the Agreements they would like to have applied and which provisions they would like to ignore.

Finally, Plaintiffs argue that, because this is a diversity case, the Court must apply the substantive law of Tennessee. Plaintiffs argue that, although the Federal Arbitration Act permits the arbitration of issues pertaining to contract formation, (*i.e.* fraudulent inducement), Tennessee law does not. In other words, Plaintiffs argue, if they raise an issue concerning the validity of the contract, even though the contract has an arbitration provision, the issue of the validity of the contract must be determined by a court, not by an arbitrator.

Since Plaintiffs brief was filed, however, the United States Supreme Court has ruled otherwise. In *Buckeye Check Cashing, Inc. v. Cardegna*, ___ U.S. ___, 163 L.Ed.2d 1038 (2006), the Court noted that it had previously held that the Federal Arbitration Act "creates a body of federal substantive law," which is "applicable in state and federal court." 163 L.Ed.2d at 1043, citing *Southland v. Keating*, 465 U.S. 1, 12 (1984). The *Cardegna* Court stated, "We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court."

In *Cardegna*, plaintiffs filed suit in state court, apparently relying upon state law, concerning various deferred payment transactions they completed with defendant. In these transactions, plaintiffs received cash in exchange for a personal check in the amount of the cash

8

plus a finance charge. For each separate transaction, they signed an agreement which included an arbitration provision. Plaintiffs filed suit in state court alleging that defendant had charged usurious interest rates and that the agreement violated various state lending and consumer protection laws. Defendant moved to compel arbitration, but the trial court denied the Motion, holding that a court, rather than an arbitrator, should resolve a claim that a contract is illegal and void ab initio.

The Supreme Court rejected Plaintiffs' arguments in *Cardegna*, stating the following three propositions:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the Arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

163 L.Ed.2d 1044.

In summarizing its ruling, the *Cardegna* Court stated, "We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the Arbitrator. *Id* at 1046.

Thus, Plaintiffs' claims that Tennessee state law controls and that that law does not allow an Arbitrator to decide issues concerning the validity of the contract, must be rejected.

### III. Recommendation

For the foregoing reasons, Defendants' "Motion to Compel Binding Arbitration and Stay Litigation," (Docket No. 3) should be GRANTED. Plaintiffs and KBRG Nashville should be

9

required to arbitrate their contractual disputes. Plaintiffs' action against Keystone should be stayed pending the arbitration.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

E. Clifton Knowles
United States Magistrate Judge